Stephanie Engelkar, Washington County, Individual Employees  in the case. Second, the district court did not determine the issues of official immunity or the Monell claim. Third, the district court did not consider individual liability on the failure to intervene or conditions of confinement claims. Fourth, the district court erred by applying the wrong standard and disregarding the lack of clearly established law regarding the use of force on a mentally ill inmate, and it is not clearly established under the 8th or 14th amendments that force cannot be used against a mentally ill inmate. And finally, the district court also erred by denying qualified immunity to the jail commander and nurses when it is not clearly established that a mentally ill inmate cannot be segregated. So, first, breaking that down, since there's a lot to break down here, is with regard to the individuals, there's four individuals here, Jorgensen, Warnicke, Gajkowski, and Capra. Under Heartland, this court can review the district court's failure to conduct an independent analysis for these individuals, and there's been a procedural error here in not even analyzing the claims against these individuals. Other than being in the caption, I frankly don't know what to even tell my clients, Jorgensen and Gajkowski, why they're in the case. Warnicke and Capra, the district court dismissed the deliberate indifference. I would suggest you just end with that, and we'll see what the response is, because I have this train as well. Yes, Your Honor. And under Yankton, I would argue that at this point, that's been waived, and it's too late for the appellee to respond with those individuals. Next, the court should have decided the official immunity issue, and that was an error, that's a procedural error for the district court to not decide that issue when it was before it. This court can decide that under McCrary. So I'd leave it on the briefing with regard to that issue that the appellee failed to establish willful or malicious intent to remove immunity from the discretionary conduct of the individuals that were providing medical care or for discretionary use of force. Next, with regard to the Monell claim, again, same issue, it wasn't decided. When we look at the district court's order, the court just refers to, we'll deal with this at trial on the parallel claims that are left. But here's the problem, Monell's not a vicarious liability principle. You're starting with the caboose for us. If we don't decide the qualified immunity claim, against the individual defendants who were named and analyzed, you don't get the first base on appeal with the Monell claim because it's obviously not intertwined with anything that we're going to decide. And I can tell you, we know official immunity is different under state law than qualified immunity, and we get to that last. Yes, Your Honor. Your Honor, with McCrary, here's what's different. With the Monell issue, here, it didn't get decided. So under McCrary, this... It's not intertwined, so what? It's not appealable. Right. Your Honor, under McCrary, this court has discretion to decide if there was a procedural error in that a dispositive issue was not determined, this court can decide that issue. But in the case that Judge Loken's just described, we're without jurisdiction to take up the Monell case, the claim at all, because it's not inextricably intertwined. And this is an interlocutory appeal. It is. So respectfully, Your Honor, I disagree. The Monell claim is inextricably intertwined with the constitutional issues before the court here. With regard to, first of all, the district court misapplied the use of force claim, and frankly, even the constitutional standard, it veered into applying the... Okay, well, let's go there. We don't want to talk about Monell until we decide the merits of the claims against the individuals. You're wasting our time at oral argument, frankly. I apologize, Your Honor. It is an issue that we've raised that... But you ought to have sense when preparing for oral argument to figure out to prioritize. And you got 15 minutes, and six of them are gone, and you haven't reached the things that are, frankly, the guts of the appeal. Well, I appreciate the feedback, Your Honor. Frankly, I had my argument flipped the other way, but I wanted to point out all of the questions we have unanswered. It's your time to point out the questions. With regard to, it sounds like the court wants to jump to the use of force issue here. Jump? That's the dang appeal. I wish it was the only issue on appeal, but we have a world of issues in this appeal. So the use of force issue here is that the district court erred by veering into analyzing whether Peterson posed an imminent threat. Now what's important here is that the district court determined Peterson was a convicted prisoner at all times. That means we look at this through the lens of the Eighth Amendment, not the Fourteenth Amendment pretrial detainee standard. The court then, and there are several instances of force that the court looks at, but the court veers into discussion about whether or not Peterson was an imminent threat to But when we look at the Hudson v. McMillan standard of the Eighth Amendment, imminent threat is nowhere. Imminent threat is nowhere in the Eighth Amendment test. Let's start with, if you're right that the district court applied the Fourth Amendment standard instead of the Eighth Amendment standard, is that the end of the appeal? Is it just a clear reverse? It's not the complete end of the appeal because, as the court pointed out, there's the caboose of the official immunity issue that was not decided. Forget the caboose. Is it the end of the most fact-intensive? Yes. Yes. If the court finds that the district court erred by applying the wrong standard and this court determines there was no Eighth Amendment violation, that also kicks out the Monell No, no, no. Now you've just answered my question. No, it's not the end of the case. We want you to decide there wasn't an Eighth Amendment standard despite the district court's not analyzing that. Yes, Your Honor. Appellants always argue to the district court and we could do that. Is that prudent for us to do that? Your Honor, respectfully, the court has discretion to decide the issue or remand it. Appellants would request that the court decide the issue because the court does have the record and can look at the issues and as a matter of law, there is no Eighth Amendment violation. This court, both in Ryan v. Armstrong, and that probably goes to the heart of the instance where there was the most force used with the FN-303, that in this court had addressed that. Your Honor was on the panel and had a dissent in that case. In that instance, all three judges on that panel agreed that when there was active resistance to the cell extraction, more force could be used and that's on point to support that there's no Eighth Amendment violation. Also Ryan v. Armstrong, there was a use of force component for the cell extraction and then there was a deliberate indifference claim and on the deliberate indifference claim, Your Honor had a dissent on that. Also Ward v. Smith is on point that spray, the chemical spray, can be used when there's a refusal to comply with commands and that supports the other issues here that are laid out in the briefing and in the record. I won't dive into detail there, but the record is there for this court to be able to make a determination that there is no Eighth Amendment violation for these instances on the use of force. Additionally, Appellee has taken the position that because he had a mental illness that they couldn't use force and that's just simply not the case. That's not the state of the law. For one thing, the Supreme Court has rejected prior attempts to somehow change the standard Next, the other, if there are no other questions on the use of force, the other big issue here is You haven't stated the Eighth Amendment standard and why it's not met on this record. Yes, Your Honor, the Eighth Amendment standard as the Supreme Court lays out is Hudson v. McMillian and it turns on whether it was applied in a good faith effort to maintain or restore discipline or whether it was maliciously or sadistically for the very purpose of causing harm. Given the number of incidents that are complained about, how can we decide as a matter of law no evidence of malicious intent to harm or punish when the district court didn't decide that didn't address the question? Well, this court has said, and we've said in our briefing, when there's a question about whether or not as to the reasonableness of the use of force, that doesn't mean that each time that's going to the jury when we're looking at an Eighth Amendment standard. And that's why it's important No, it's not a jury question, probably. Ultimately, it's a question for the court. The Supreme Court never lets constitutional questions, it wants the ultimate power to decide to say they're jury questions. But if it's fact-intensive, then it's premature. Then if that means that, that would effectively mean that every claim would go to a jury on malicious or sadistic intent and the record just doesn't support that. No, what the question really is, is on this record before us, the judge did not or arguably did not apply the Eighth Amendment standard at all. He did not do the analysis. He did not do the analysis on an individual-by-individual basis. That those decisions were never made and that while if the record were fully developed and it were before us as a fully developed record, we could and we certainly have the authority to make a decision as a matter of law that there is no Eighth Amendment violation here. The question is, why should we do that? Is it prudent on this record, on these facts, for us to do that? Or should that just go back to the district court to say, hey, we think you applied the wrong standard. We think you didn't discuss the individual liability. We can't figure out exactly who's in and who's out. Please explain. I mean, it would be weird because he's got a 52-page opinion, but there's a 52-page opinion that says a lot of nothing at a lot of times and the analysis is fairly thin. I mean, there's a whole mess of facts, some of which are disputed and we don't know. At this stage, you're supposed to be viewed in the light most favorable to the non-moving party, right? I mean, so, I'm still stuck where Judge Loken started this conversation, which is, why is it prudent for us to make this Eighth Amendment decision on this record before us? Yes, Your Honor, and you're correct under... I'll remind you, long before you were starting in practice and I was a rookie judge, we would get a number of cases in earlier era of qualified immunity in which the district courts would simply enter a final judgment, usually a summary judgment, against the defendant with no mention of qualified immunity, and that was an error of law. We wouldn't decide on the appellate record that the defendant was entitled. We'd send it back. You've got to address qualified immunity, and that's what Judge Erickson is posing here. Yes, and this Court has the discretion to do either, so the Court can certainly remand it back to the district court, but this Court does have the discretion to decide the dispositive issues as well, and on this record, we've provided a record for this Court to find that there's no Eighth Amendment violation. With that, I would respectfully ask the Court to reverse the order, and I will save remaining time for rebuttal. Thank you.  Mr. Morrison. Good morning, Your Honors. May it please the Court, my name is Stephen Morrison on behalf of the appellee, Mr. Brandon Peterson. I respectfully request that this Court affirm, remand the district court's order for trial for two independent reasons. The first is that the district court properly concluded and denied summary judgment to the defendants because genuine disputes and material facts preclude a decision on a qualified immunity issue, including both prongs that the Court has discussed this morning, both the question of whether a violation occurred, as well as whether that violation was clearly established. And second, as this Court has noted, this Court lacks jurisdiction over a great deal of this appeal. Specifically, any questions about the sufficiency of the facts of which the district court determined, as well as the municipal and official immunity claims, which there is not even a decision before this Court on appeal here. So it's the Court lacks jurisdiction on that, both for that reason and because the issues properly before the Court are not intertwined with those claims. Would I first address a couple of points that my friend on the other side. Well, where do you – what's your position on Eighth v. Fourth Amendment? Your Honor, we argue that under either of those, our client wins. Under what? Under either of those amendments and the standards, our client wins. In fact, that's the first issue that I wanted to address, as the appellants have stated to this Court. Well, which did the district court apply? The district court applied the Eighth Amendment, Your Honor. And it – I thought the language was clearly Fourth Amendment language. No, Your Honor. We can look at what is in the addendum, which is the district court's opinion. Does it address the excessive force issue? Starting on page 34. This is where the Court – the Court cited the Hudson. It cited the very standard that the appellants brought to this Court, that is, whether the force was applied. Page 34 of what? Of the addendum, Your Honor, which is the district court's opinion below. Well, what page is the opinion? I think I've – yeah. I've got it. I'm looking at page – it's page 34. The heading is excessive force. All right. I got the wrong one. It's – the record number is docket number 220. I'm looking at the wrong thing. No, not a problem. Please take your time. Okay. Judge Loca, I'm happy to proceed or wait for you to find it as you prefer. No, no. I've got it. I noted before that the Court purported to say the Eighth Amendment applied, but I didn't think it – it then didn't apply the Eighth Amendment standard. Your Honor, I respectfully disagree with that. We can start by seeing what – you know, the boilerplate language the district court laid out. That's on page 34. And then right after citing Hudson, it appropriately noted the factors that the force was excessive. It then began to walk through, based on facts that it set out earlier, starting on page 9. But where was the motive analysis, which is essential to the Eighth Amendment test? Under the Eighth Amendment, Your Honor, the Court looked at both the objective and the subjective and found that there were genuine disputes of material fact as to six of the incidents determining whether Mr. Peterson was actually a threat. Whether Mr. Peterson – But you just gave me a page number for the introduction. Where do I look for that analysis? Because I thought it was missing. Yes, Your Honor. The analysis first starts on page 35. The reference to page 9 is the facts setting forth the actions of each of the individual defendants involved in the excessive force claim. But if you look at his analysis and you look at Judge Frank's conclusions, he always gets to the point where he says, viewing the evidence or the evidence in the light most favorable to the plaintiff, a reasonable fact finder could conclude that there was no objective need for the degree of force used. And it was not reasonably perceived a threat to himself. That's not the same as making a finding that it was malicious. Right? I mean, and that sounds more like Fourth Amendment stuff than Eighth Amendment stuff. I mean, he's got all the boilerplate right. He says he's doing the analysis. But when you get down and you say, okay, now here's the law. I'm going to apply this to the law. It kind of looks like he slipped into this whole, you know, degree of force and reasonable perception of threat and doesn't do the malicious analysis. Your Honor, I disrespectfully disagree. Let's start with page 36 of the addendum. This is dealing with the February 19th incident. Right. That was when the jail was flooded. The very last paragraph on page 36, this is the Court's conclusions based on the facts it set forth already as well as a brief restatement of the pertinent facts on that page 36. First, the Court concludes that the officers could, quote, not have reasonably perceived a threat to themselves or security and that the officers failed to temper their use of the force, particularly in using the restraint chair and the chemical spray while plaintiff was restrained. That's the objective. In addition, it would be reasonable to conclude that force was used maliciously and not in a good faith effort to maintain or restore discipline. I'm looking at page 36 and Sergeant Klinkner then used chemical spray without warning on plaintiff who was fully restrained in the chair. That's not an analysis of maliciousness. Where are you looking on page 36? Your Honor, I was reading from the very last paragraph that carries over from page 36 to 37. I apologize. He's reading the last sentence of that paragraph on the top of page 37. A reasonable fact finder could conclude that the officers could not reasonably have perceived a threat. In addition, it would be reasonable to conclude that the force was used maliciously. Yes, Your Honor. That's saying that the Eighth Amendment is a jury question. No, Your Honor, it's not. It's saying that here. You're talking about what a reasonable jury could conclude, not what he concluded. Your Honor, I don't want to get too busy into trying to get in the mind of the district court. No, but we, I mean, this is, if he didn't apply the Eighth Amendment, this is not going to stand. And, Your Honor, it would properly be reversed in that instance. If the court looks, what the court is saying here is that it would be reasonable for the court to conclude that the four, that would be just artful language. If you take that out, it just started, the force was used maliciously and not in a good faith effort to maintain or restore discipline. That's the court's conclusion based on the undisputed facts and the disputed facts taken in Mr. Peterson's favor. Each of the six incidents at issue involved the district court's conclusion in a 52-page opinion, as Judge Erickson noted, very fact-intensive, noting why it was that it was disputed whether Mr. Peterson was complying, resolved that dispute in favor of Mr. Peterson, saying that a fact-finder could conclude that he was indeed complying. There was no warning. That's not even a disputed fact. In each of the incidents, there was no warning before the force was used. But you don't, if you look at the next incident, the February 23rd incident, he says that there remains an issue of fact as to whether the chemical spray used was in a good faith effort to maintain or restore discipline, or if it was used maliciously against an inmate they considered difficulty. Doesn't that say that he's submitting that question to the finder of fact, the jury? The ultimate conclusion, yes, Your Honor, he's submitting that question of whether the Eighth Amendment standard is met. But what the district court did is say that there are material disputes of fact about which way that should go. Here, taking the facts and, as the district court found, that Mr. Peterson was complying, that there was no need for force when it was applied in each of these incidents. Given the purpose of qualified immunity, which is to prevent the cost of subjecting municipal officers to the cost of defense and trial, why shouldn't it have been decided now, the subjective component of Eighth Amendment deliberate indifference liability? Your Honor, it can't be— Was discovery not completed? No, Your Honor, it was very much completed after a year and a half. So the court had—didn't the court have an obligation under Supreme Court precedence to decide it? It did have an obligation, Your Honor, the court— And didn't decide it. Respectfully— The court just didn't make the Eighth Amendment findings. Respectfully, Your Honor, I just have to disagree with that. The court did go through each of these incidents and conclude that the reason it could not grant qualified immunity was because— The court decided a jury ought to hear all these incidents. It could be, Your Honor, because those incidents demonstrate that, taken in Mr. Peterson's favor at this stage, which this Court has to defer to on this interlocutory appeal, that it could not resolve the qualified immunity question in the defendant's favor because there was, one, an Eighth Amendment violation. They did, in fact, maliciously and sadistically use this force against Mr. Peterson. And, two, this Court's well-settled precedent under Treats, under Falk, the Court just decided just this last year that when an inmate or when a subject of force is complying, if there's a dispute about whether or not they're complying, this Court has affirmed the denial of qualified immunity on that because it has to go on to the ultimate— It's not an inmate. Your Honor, I believe you're correct. That's the McReynolds case from 2021. I believe Judge Erickson— It's very different. Inmate versus noninmate is a very different issue. Your Honor, that— Yes, that's correct. The standards are different between arrestee and an inmate. To that particular point, it is not correct that district court finally determined that Mr. Peterson was, in fact, convicted. Instead, it decided not to resolve that. That's on page 32 of the district court's order. It found that it could just apply the Eighth Amendment standard and that Mr. Peterson would prevail. In so doing, it relied not just on the McReynolds case, the case involving convicted inmates, including Treats, including—not Falk—Treats specifically, as well as Smith v. Conway County, that if the facts show that the inmate was, in fact, complying and the officers used force at that time, they are not entitled to qualified immunity. The level of force. The level of force— Pepper spray. I mean, a lot of this is pepper spray. The district court, as I read the opinion, equated pepper spray with multiple tasings. No, Your Honor. I don't think that's correct. The Treats case involved the use of pepper spray, as well as the Smith v. Conway—the Smith v. Conway County. I apologize. That was a taser issue. But the Treats case, and specifically, which was decided just a couple of years after the Jones v. Shield case that the defendants lie on, that one was a use of pepper spray. There are a couple of other cases— What year was it? I believe it was—I'll give you an exact answer. Approval. Treats v. Morgan was decided in 2002, Your Honor. And that involved— That is ancient. In qualified immunity terms, that's before all the Supreme Court lectures about not overgeneralizing. Your Honor, I don't think you have to overgeneralize to find that that could— You have clearly said that there's a degree between pepper sprays and macing and tasing and more physical force. And in the Eighth Amendment inmate context, the degree of force between those different ways of neutralizing or tranquilizing, if you will, a violent inmate, makes a huge difference. And I don't see in the district court's analysis any application of our case law. Your Honor, a 2017 case, we'll try that one. That's Tatum v. Robinson. That involved an inmate. This Court clearly held that an officer could not have believed that an inmate was an immediate safety threat, even when they were arguing angrily with the officer. But because they were compliant, the officer was not entitled to qualified immunity in this case. Your Honor, the ancient case law, all the way back to Treats, all the way up to a case from just a couple of years ago have remained consistent. These officers are on notice that you cannot use force against an inmate when they're complying, even if they're arguing, even if they're saying they don't want to do what you want to do. If, as the district court found, the facts that this Court defers to at this stage in the proceeding are that Mr. Peterson was compliant. This Court can easily affirm as to each of those six instances that those defendants were not entitled to qualified immunity. The other issue before this Court is whether the defendants were deliberately indifferent. A lot of the concerns are likely the same. This involves three specific defendants, Heinen, Lival, and Gaffin. The district court, again, properly applied the correct legal standard, not only whether they were deliberately indifferent, but whether this Court's precedent established that those, the violation of rights there was a clear violation of constitutional rights. This Court's decision in Ryan v. Armstrong, this Court's decision in Buckley v. Rogerson, those cases demonstrate that in Buckley, that clearly established law in late 1987 required the segregation and restraint. 1987? That's correct, Your Honor. Nothing between that time and here has changed that. The Court, the defendants have relied upon Hamner v. Burroughs, a case from a couple of years ago. That case is, one, if it conflicts with the Court's prior precedent, it shouldn't be upheld. But the Court doesn't even have to get to that point, because that case is distinguishable. In Hamner, there were only gaps in medical administration. Well, two distinguishable cases on, in, in facially similar fact situations suggest pretty strongly not clearly established. No, Your Honor. In this, the first, the first case that I was referring to, the, Buckley v. Rogerson, that case is on point. The Hamner v. Burroughs case is distinguishable because the care that was provided there was, it was obvious they were continuing to provide that and reevaluate the care that was provided. What we have here and what the district court found, the facts before this Court now, are that in the face of known substantial risk to Mr. Peterson's health, they made a deliberate decision not to provide care to Mr. Peterson. And I see my time is expiring. I want to be respectful of the Court's time. If I can answer any further questions, I'm happy to. Thank you. Thank you. Thank you. Your Honor, I have about 30 seconds. Unless the Court has any questions, I'm just up here to, again, ask the Court to reverse the district court's denial of qualified immunity. Thank you. Thank you.